Good morning, Your Honors. May it please the Court, I am Kelly Newman on behalf of the Appellants. I'd like to reserve five minutes for rebuttal. I'll first start with addressing the issues arising under Count 5 in relation to E-Clean operations and then deal with the counterclaims. I also want to note on the record that a portion of the issues appealed with respect to Keely Newman in Count 4 of the amended complaint were stayed by the Court at Appellee's request, and those are not before this Court at this time, but may arise at a later time. So turning first to Count 5 against operations, here the Appellee failed to establish beyond controversy each of the elements of the claim that she asserted as a breach of contract claim, which was what was presented in the amended complaint. In its summary judgment opinion was that it was the missing payment schedule, one of the essential terms of the claim. The Court then turned without analysis of the other elements that the Appellee had the burden of establishing with evidence with respect to the presented breach of contract claim to a totally different argument that it developed sui sponte under the Arizona negotiable instrument law. The Court concluded that the note at issue was a negotiable instrument and then awarded summary judgment in... The Court also relied on the bankruptcy, the provision in the note about what would happen in the event of bankruptcy. What happened to the note in that, in ECHO's bankruptcy? Was the note, did it survive the bankruptcy? Was it addressed in a plan? What happened? Did it have any effect on it? So initially, Your Honor, I think the facts are important to keep the timeline straight. The bankruptcy provision was not triggered as of the time that the original summary judgment order was entered by the district court. It occurred afterwards as a result of the district court imposing the judgment that it did. Now, in the bankruptcy court, all the liability associated with that note is discharged. Again, but with respect to a limited liability company, the... Imposed here? Is that what you're saying? Yeah, the bankruptcy was awarded. Now, the limited liability company in this case... I'm sorry, I missed that last sentence. What did you say? The bankruptcy court did what? The bankruptcy court, you know, affirmed the bankruptcy. And so, the limited liability company here, if it were to ever continue and make additional money, perhaps that that claim could be revived in the future. But this company is dissolved. So there is no future revival possible with respect to a limited liability company that goes away, that doesn't perform any activities beyond that point. So ultimately... So I just want to make sure I understand this. So part of the judgment here is a claim on this Yes. Is it against anyone else? No. And you said that the bankruptcy court in Echo's bankruptcy discharged that debt? Well, it approved the bankruptcy. I think technically in a Chapter 7 with regard to a limited liability company, it's not the same with regard to an individual where a discharge means that it can never be revived. If the Echo, as you're referring to it, were to operate in future and earn money, this judgment could be revived in that instance. But that's impossible, that won't happen. That's a theoretical point. You said the bankruptcy was triggered by the imposition of this judgment? That's correct. So then the bankruptcy couldn't have been the trigger for the obligation in the first place? Correct. That's correct. Jess, you're saying on that basis that the district court was wrong to say that that was an alternative ground for saying that the debt was due and payable? Yes, Your Honor. But I think that the district court did not say that with respect to its initial award of summary judgment. The district court said that later in relation to a motion, a Rule 59 motion to reconsider. Right. So in connection with the motion for even if I erred in reliance on that Arizona statute, it doesn't matter. It's harmless because of the clear provision in the promissory note that if Echo becomes involved in a bankruptcy, then payment would be due. What is wrong with that analysis? Because the bankruptcy provision doesn't exist if it's not a contract in the first place. And that is the point that's being appealed. What you're applying is a provision that has absolutely no force or effect and no relevance whatsoever to the analysis if the note is not an enforceable, valid, existing contract under Arizona law in the first place. So that is the argument that is really being advanced that summary judgment has been entered, but there's no evidence of each of the essential elements of the claim. So the summary judgment is invalid because the plaintiff, excuse me, the appellee did not carry their burden. And the court did not apply that standard correctly. So as you walk through the analysis a little bit further, and I'll circle back to this point about the bankruptcy. The court did not analyze the breach of contract claim presented, moved to negotiable instrument, but erred in doing that because the note expressly states on its face that it's not freely transferable. It's only transferable in the event of consent. And the quintessential element of a negotiable instrument and the specific text within the Arizona statute says that however you say it, if it's not transferable, it's not a negotiable instrument. The court in response to the rule 59 motion for reconsideration does say, well, if that's what... Is there a case, counsel, that supports your position? There's very little case law under any of the Arizona negotiable instrument statutes. However, Your Honor, but when we look at a negotiable instrument, one of the things that immediately is a check. If person A writes a check for $10 to person B, B being the holder of the negotiable instrument, the quintessential element that must be present is that B, the holder, can transfer with no further actions necessary that check to C by endorsing it, and C can transfer it to D and so forth, and no actions are necessary. You don't have to go back to the writer, the issuer of that check and ask them for permission. You also don't have to go back to the writer of that or issuer and ask them for what are the payment terms? What are the other terms? How does this work? You don't have to go back to the issuer and say anything. And that is the quintessential fundamental element that is missing from this note. And it is specific because it is deliberately inserted into this note that it was not transferable to any third party without ECHO's permission. So when you apply the negotiable instrument law and you see that negotiability is obviously the most fundamental requirement for a negotiable instrument, and it's absent here expressly, then that reverts this court back to looking at the breach of contract claim that was originally presented, and the court found was missing a payment schedule. And that is one of the only things that the court identifies in its original ruling under the summary judgment motion. In addition, then you get to the issue of consideration. You get there also if you're in the negotiable instrument argument because you have to have consideration for a negotiable instrument. It's a purely legal issue, and the facts and that Kim Crampton never gave any money to operations, and operations, operations, ECHO, as the court has called it, has never made a payment on the note. There's no partial performance by ECHO. There's no money that transferred between Kim Crampton on the one hand and operations on the other hand in either direction. And there's no consideration. The only stated within the motion for summary judgment was an argument that was never raised before that moment in time that Kim Crampton transferred assets in Crown Enterprises to operations. There's no evidence attached to the motion for summary judgment or anywhere in the record that Kim Crampton had any assets in Crown. It belies the fundamental concept that a membership interest in an entity does not entitle a member to any underlying assets of that company. In addition, the operations proffered exhibit are attached to the response to the motion for summary judgment, which is 2ER-260 with all of the attachments through 2ER-286. And that document makes it expressly clear and was presented to the judge at the time that operations never exchanged anything directly with Crown Enterprises. And so Kim Crampton didn't have any assets in Crown. Crown sold its assets to another entity that goes by the acronym EHL. And at the time that operations actually ultimately becomes an owner of the Crown location and those related assets, Kim Crampton owned nothing. She owned nothing because that exhibit R shows that it was in the Crown assets at that time. So there's key transactions that occurred. Can I ask you to address the settlement issues and why you think that the settlement, you know, which says each part, it refers to claims arising from each party's employment with the corporation and the corporation being GGS, why that applies to a claim related to employment with GFL? Well, because all that the plaintiff did, Your Honor, was simply not use the words Gulf Girls Square GGS. She used all and described all of facts and events that are distinctly GGS facts and events. And she asserted them against the wrong party, which is never proper. And so the evidence presented to the court and the court became educated and clear over time that whenever she said, the stores, the stores, they made me go back to the stores. That was directly, just take the words, the stores and supplement GGS. She admits that that's all in the record. She admitted that. She admitted that she included time working in the stores in her claim against franchisor. She admitted that her ADA claims were based on, she was bothered and harassed because she was told to go back to the stores, which means that when she says that, Your Honor, she's talking about what happened at GGS. And those are all employment claims. One through four are all employment claims. And the court recognized that what was released under the release was all employment claims that related in any way to GGS. So as you look at that evidence, when you see the words, the stores, you repeatedly see that more than 10 times in exhibit C to the response, as well as the additional information that was submitted to the court and the supplemental that the court did not give due rebuttal. I'm sorry for interrupting. You can finish that if you want, but I know you to save time and you're down to less than two minutes. I will save the remaining time I have for rebuttal. All right. Thank you. May it please the court. Todd Feltis on behalf of the appellee, Kim Crampton. And I think I'll start by unpacking the bankruptcy in case there's some confusion on the timeline and how we got there on the promissory note claim. The initial summary judgment motion that was filed at the end of 2019, it was filed during the course of 2019, the ruling was right around Christmas, was a partial summary judgment on liability on the promissory note. That motion was granted. That's where the district court came up with the UCC theory. There were other grounds. The issue on the motion really was, was a payment obligation triggered. In response to the motion for summary judgment, the defendants or ECO argued that there was consideration. In fact, that the note constituted consideration for the transfer of this one Gravigreen store that went from Crown Enterprises into ECO. And in fact, separate notes were provided both for Kim Crampton in the amount of 66,000 and change in a separate note to Keely Newman in the $90,000 range. These were specific amounts and they were tied to money that Kim Crampton specifically put into the store that started at Crown Enterprises. But the note says it's not transferable without consent. And how something that's not transferable without consent can be said to be negotiable seems to me to be a contradiction in terms. Well, Your Honor, I guess two comments on that. One, I don't think we need to go there given the admission in the summary judgment response that they were insolvent. And that's in footnote seven to the response to the motion for summary judgment. They conceded that ECO was insolvent at the time of the note. They had some explanation for why that didn't trigger the payment obligation under the note, but didn't cite any authority. And it's never made sense to me. That's not something the district court read. The district relied on the bankruptcy. Did it rely on the insolvency preceding the bankruptcy? Later on, it did. And I believe in the ruling on the motion for new trial, it pointed out that the position that Ms. Crampton took in the original motion for summary judgment was correct on insolvency. Then I guess to answer Your Honor's question on the, I mean, the three elements of a negotiable instrument under Article III of the UCC is that it's payable to bearer or to order, that's expressed in the note, that it's payable on demand, and I'll come back to that in a second, and that it does not state any undertaking by the person ordering payment. That is, it wouldn't order any kind of conditions upon E-Clean Operations in making the payment. This notion of transferability, nobody's located in any case that would say that's an exception from these three elements. And certainly, E-Clean Operations has never cited any case saying that transferability takes it out of these three elements for what a negotiable instrument is under the UCC. So, I mean, I've seen the argument throughout this case. So, what's negotiable means that you can give it to other people or just assign it, but it has a prohibition on assignment. It's not negotiable. It can be assigned with the consent of E-Clean Operations. Right, but with consent. But negotiable means it's freely assigned. If I take the check, I can endorse it, and anybody can use it at that point. Well, again, I understand what Your Honor is saying. The three elements that I just recited are the elements of negotiable instrument. There isn't any case law that we were able to find or that's been cited by the other side that indicates that a transferability restriction takes it out of Article III. And I'd submit the easier course of action is that we've got two pretty easy applications between insolvency and bankruptcy. Walking back through the timeline of how we got here, we have a ruling on partial summary judgment on liability. E-Clean Operations filed for bankruptcy a month later in January 2020. Case goes forward. We have the bench trial. But that bankruptcy was triggered by the judgment. Is that what counsel said correct? No, that's not correct. There was no judgment at the time of the 2019. Liability determination? But there was no judgment entered. We just had a summary judgment ruling. It was never reduced to a final judgment or a 54B judgment of any type. The case proceeded to the bench trial in May of 21. Around that time, the bankruptcy court terminated the Chapter 7 case, finding that there were no assets within E-Clean Operations for creditors. In a entity bankruptcy, unlike an individual bankruptcy in Chapter 7, there is no discharge. So, I mean, we're in a weird spot. And the problem that Ms. Crampton faced at that point in time is we have this bench trial and there's a couple lingering claims, this promissory note claim being one of them. So, what do we do about it? Well, we offered to dismiss the claim without prejudice and we'd pick it up in a companion state court case or do something else. The other side didn't want to do that. And meanwhile, we've got the district court concerned about what the effect of the bank, what the bankruptcy is. In the past, path of least resistance from Ms. Crampton's standpoint is ask permission to file another summary judgment deal with the damage claim, which is pretty straightforward at this point in time because the payments under the promissory note were determined at trial to be payments under the promissory note. It was the lowest end of the range of what was owed under the promissory note, $23,017. So, Ms. Crampton moved for summary judgment on that issue on damages. And in the obligation, even if everything that was done back in 2019 was wrong, at this point in time, we do have a clear trigger of the payment obligation under the note. So, we don't have to mess around with the UCC and whether transferability applies or doesn't apply. So, I mean, at that point in time, if we were to reverse the summary judgment ruling, what is there? There's nothing there for a fact finder to decide. We've got a payment obligation based on the bankruptcy. We've got an amount certain from the calculations that we've walked through in our papers and that's in the record through multiple emails and a confirmation of the $23,000 number. I think the district court even pointed out kind of the strange argument that Ms. Crampton made and that she's arguing for the lowest possible amount, because the only other option between the $23,000 would be the full face value of the note. So, we got there and we got there in an unorthodox way. There's no question about it. But through the motion, both 2019 and the motion that was filed again at the end of 2021, we end up in the place where there's a reasonable juror couldn't reach any other decision on this. There wasn't an enforceable note. It was admitted by Eat Clean Operations in the original summary judgment papers. There wasn't a payment. Nobody disputed that. In fact, Eat Clean Operations took the position that more money was owed under the note. And there never was payment. So, the damages are there. Those are the three elements for each contract under Arizona law. Can you address the settlement? Sure. So, under the release, I mean, it relates specifically to Gulf Girl Squared. It's relating to Gulf Girl Squared. It's anything related to the ownership of Gulf Girl Squared and anything related to the employment of Gulf Girl Squared. The claims that were alleged in the complaint had nothing to do with claims that were brought against different entities. The EEOC claim that was filed pre-suit was directed at the other entities, not Gulf Girl Squared. Ms. Crampton's employment was with Gravity Green Franchising that started in 2016. There was a little bit of overlap, at least in that year. But the payment was about $170,000 in 2016 from Gravity Green Franchising. And she received about $16,000 from Gulf Girl Squared. In 2017, she didn't receive any money from any entity. So, the claims over the course of 2017 brought by Ms. Crampton had nothing to do with Gulf Girl Squared, even if there is some way to bring the claim back. And certainly, there's some overlap here between the two entities. But certainly, by bringing the claim and excluding Gulf Girl Squared were outside of the release, as the district court correctly found. But more importantly, for purposes of the ADA claim, one of the elements is that there was an adverse employment event. And as pleaded in both the complaint, the amended complaint, that adverse employment event, which Ms. Crampton alleged was a constructive discharge, didn't take place until September 25th of 2017, 10 days after the release. And as we cited in our papers, a prospective release of ADA claims is not allowed. So, if the release was signed on September the 15th, at that point in time, there was no adverse employment event. So, there was no claim that accrued at that point in time. Moreover, by the time we get to the 25th of September, when there was at least what we alleged and the district court agreed with or disagreed with us and granted summary judgment in the defendant's favor, but certainly what we alleged in the amended complaint was that that claim was based on what was alleged to be a constructive discharge on the 25th of had nothing to do with that adverse employment event because they were out of the picture at that point in time. So, the district court, any way you look at it, properly applied the release to both conclude that the release didn't bar Ms. Crampton's claims, and two, there was no separate breach of contract or breach of the implied covenant claim arising from the release. And as I'm down to the last couple of minutes, just one point on the notion of consideration and really gets down to the extent that there's conflicting stories on what the $66,000 was for. And under Ms. Crampton's theory, it was money that went into E-Clean Operations and ignoring the corporate mechanics and back and forth that went on. The other side presents a slightly different story that this was money that went into Crown Enterprises and then those assets were all transferred over and that the note was consideration. To the extent that there is a factual dispute on that, maybe there is on that it's not a genuine issue of material factors. If the jury reached either conclusion, the end result's still the same. We have a note that's just supported by adequate consideration. So, there'd be nothing for the fact finder to decide and there is no third theory that's been offered in the record. So, to sum up on the note claim, I think this is a pretty easy claim, notwithstanding the long and windy road we took to get there. There is a note. There was a repayment obligation that was either triggered by the insolvency that was submitted in the response to the bankruptcy that occurred in January of 2020. Certainly, as we came to the end of the road on the final judgment in November of 2021, either one of those two events would have triggered a payment obligation under the note. And I don't think we need to wrestle with Article 3 of the Act. And there's no dispute as to what the amount was due. It's $23,017 and change. The district court was right on all three parts. Similarly, on the release, it's a pretty easy claim. The release applies to claims that in real shorthand form applies to Gulf Girl Squared. None of these claims applied to Gulf Girl Squared. None were named against Gulf Girl Squared. Even the pre-EEOC complaint wasn't addressed at Gulf Girl Squared. And more importantly, these claims didn't accrue, certainly as it relates to the ADA claims, until after the release and the adverse employment event had nothing to do with Gulf Girl Squared because there was no employment relationship at that point in time. So, put simply, the district court on these two issues got it right and the judgment should be affirmed. Thank you, counsel. I think you're on mute. You are on mute. My apologies. On count five, Your Honors, the record established that Kim Crampton did not loan money or give money to operations. The insistence on challenging the underlying facts in the record is improper before this court. In addition, she never loaned the money as the lender under the note. There was never a requirement for repayment because the money was never given to operations in the first place. Operations- What's your response to his point about insolvency being a sufficient trigger and you had conceded that? Because it does say in the note, if the borrower becomes insolvent or the subject of a voluntary or involuntary proceeding in bankruptcy, then the lender, upon the occurrence of this event, made its option without further notice to the borrower, et cetera. So, why is an insolvency alone enough of the trigger? Because the loan was never made. If the loan is going to be used to repay the loan and you never give the money in the first place, you never have the money to return it. So, that's what makes ECHO insolvent. It's circular. The insolvency is triggered by the fact that the loan was never made. If Crampton had given ECHO $66,527 that it could make a payment back, then ECHO would not have been insolvent. So, it's circular. Their argument is circular. They never loaned the money and they want a repayment. In addition, there is no admission, absolutely no admission. And our imposed inferences put words in witnesses' mouths, changed words in a declaration to reach a conclusion in favor of the moving party who had the ultimate burden of proof at trial, completely flipped the standard under cell attacks in Rule 56 on its head. Those inferences were to be drawn in the light most favorable to the non-moving party, ECHO in this case. And where there were gaps in the evidence, that means that the appellee did not carry her burden of producing all the evidence necessary for every essential element. Thank you, counsel. You're actually over time. Thank you. Thank you, Your Honor. Thank you to both sides for your argument. The matter is submitted. And we'll take a 10-minute recess. All rise. The court stands in recess until 1055. Thank you.
judges: NGUYEN, COLLINS, Korman